MANN WYATT TANKSLEY
201 E 1st Ave.
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE, | ) )<br>)<br>) |
| Plaintiff, | ) ) |
| v. | ) Case No. 25 CV _____ )|
| TECHPUMP SOLUTIONS, SL, | ) ) |
| and, | ) ) |
| JOHN DOE D/B/A SUPERPORN.COM, | ) ) |
| Defendants. | ) ) |

Pursuant to K.S.A. Chapter 60.

## COMPLAINT

For his cause of action against Defendants Techpump Solutions, SL and John Doe d/b/a

superporn.com, Plaintiff Q.R., a minor, by and through his natural mother and next friend Jane

Doe alleges and states:

### Parties

1. Plaintiff Q.R. ("Plaintiff") is a minor child who is domiciled in Olathe, Johnson County,

Kansas. Plaintiff's claims in this matter are brought by and through his natural mother and next

friend, Jane Doe, with whom he resides. At all times relevant to this Complaint, Plaintiff was

physically present in the state of Kansas.

2.    Defendant Techpump Solutions, SL ("Techpump") is a foreign commercial entity incorporated in Asturias, Spain. Their principal office is located at Plaza 6 de Agosto, 6, 2º 33207 Gijón, Asturias, Spain. At all times relevant to this Complaint, Techpump owns and/or knowingly hosts superporn.com. Upon information and belief, Techpump may be served with process at the above listed address.

3.    Defendant John Doe d/b/a superporn.com ("John Doe"), is a commercial entity whose true identity is currently unknown. At all times relevant to this Complaint, John Doe owns and/or knowingly hosts superporn.com. Upon information and belief, John Doe may be served with process at any address identified during the course of discovery where they may be found to be conducting business.

## Jurisdiction and Venue

4.    This Court may properly exercise personal jurisdiction over all parties. This Court has subject matter jurisdiction over this case. Venue is proper in this forum.

### *Personal Jurisdiction*

5.    This Court has personal jurisdiction over Plaintiff as he is domiciled in Kansas.

6.    This Court may properly exercise personal jurisdiction over Techpump and John Doe (collectively "Defendants") under K.S.A. § 60-308(b)(1)(A) as Defendants, at all times relevant to this Complaint, have engaged in business in the state of Kansas via consumer transactions. Defendants are further subject to this Court's jurisdiction pursuant to the Kansas Consumer Protection Act, specifically K.S.A. § 50-638(a).

7.    This Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(B) as they have committed a tortious act within the State by allowing Plaintiff, who

is a minor, to access content that is harmful to minors without employing reasonable age verification as required by K.S.A. § 50-6,146.

8.   In the alternative of, or in addition to the above ¶ 7, this Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(G)(i)-(ii) as Defendants caused an injury to Plaintiff, who is a minor, through an act or omission which took place outside of the state of Kansas while: (i) they were engaged in solicitation or service activities in the state of Kansas; and/or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in the state of Kansas in the ordinary course of trade or use.

9.   This Court may properly exercise personal jurisdiction over Defendants under K.S.A. § 60-308(b)(1)(L) as Defendants maintain minimum contacts with Kansas such that maintaining this lawsuit does not offend traditional notions of fair play and substantial justice.

### *Subject Matter Jurisdiction*

10. This Court has subject matter jurisdiction over the cause of action under 28 U.S.C. § 1332(a) given the parties diversity of citizenship and the fact that the amount in controversy exceeds $75,000.00.

11. This Court has subject matter jurisdiction over this case pursuant to the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* because Defendants have engaged in consumer transactions in the state of Kansas.

### *Venue*

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 2255(c) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## **Background Facts**

13. Defendants intentionally operate a global network of internet sites and platforms, including superporn.com and numerous other websites, for which the video feeds linked by those sites originate from media servers operated and/or controlled by Defendants.[1]

14. Superporn.com is a pornography website that knowingly shares or distributes material containing nudity, sexual conduct, sexual excitement and/or sadomasochistic abuse.[2] Such material appears on 25% or more of superporn.com's web pages when viewed on said website during any calendar month. This material is considered "harmful to minors" as, when taken as a whole, an average adult person and/or a reasonable person would find such material: (1) has a predominant tendency to appeal to a prurient interest in sex to minors; (2) is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and (3) lacks serious literary, scientific, educational, artistic or political value for minors.

15. To illustrate this fact, Defendants describe the content on their website as: "The porn videos you like most sorted by categories. Free streaming of original porn series." Please see the below true and correct screen capture of Defendants' Google meta description taken on January 23, 2025:

---

[1] MAVISE – Database on Audiovisual Services, *European Audiovisual Observatory*, https://mavise.obs.coe.int/advanced-search?provider=19908 (last visited Jan. 23, 2025).

[2] True and correct screen captures of Defendants' website http://www.superporn.com taken on Feb. 05, 2025, attached as Exhibit A and incorporated by reference herein, are subject are subject to a pending Motion to Seal.



16.     At all times relevant, Defendants provided the technology and resources necessary to store and maintain the electronic files and applications associated with superporn.com on a computer server in order for it to be accessible via the internet.

**_Defendants' Targeting of U.S. and Kansas Citizens With Their Content_**

17.     Defendants have expressly aimed their website, superporn.com, at Kansas and United States citizens.

18.     Defendants have gone to great lengths to categorize the pornographic content they host so users can quickly search for and find the videos they desire. Typically, a website will sort these videos into categories based on the hashtags and earmarks placed on them by the content creator/uploader. However, Defendants go the extra mile for users on superporn.com by creating "Porn Series."

19.     A "Porn Series" is a collection of pornographic videos relating to a certain topic, scenario, or fetish that are "handpicked" and provided to users by Defendants. Users are then able

to "follow" and "share" these series. See a below screen capture taken on January 23, 2025, showing Defendants' most popular "Porn Series" as of that date (obscene content has been censored):



20.     According to the above, "SuperPorn US" is Defendants' most popular "Porn Series."

21.     "SuperPorn US" boasts over 45,000 followers. Defendants have "handpicked" and uploaded 2,992 videos into this particular "Porn Series." Please see the below true and correct screen capture taken on January 23, 2025, illustrating this (obscene content has been censored):



22.     Indeed, "SuperPorn US" is Defendants' most popular "Porn Series" by a wide margin. For reference, their second most popular series "The best fresh porn" has a little over 5,000

followers, and only has 1,168 videos uploaded to it. Please see the below true and correct screen capture taken on January 23, 2025 (obscene content has been censored):



23.    It should be no surprise that "SuperPorn US' is Defendants' most popular series as they are expressly aiming their website as US users. Per the screen capture in ¶19, Defendants "**handpick the top content for [their] US audience**." (Emphasis added).

24.    Defendant Defendants advertise themselves "as a leader in traffic management, SEO, content platforms, and intellectual property. For over two decades, [TechPump] ha[s] perfected strategies to position websites in strategic niches, maximizing monetization and large-scale content distribution."[3] Upon information and belief, TechPump accomplishes its SEO services, monetization methods, and content creation (such as "Porn Series" described above) through its own proprietary algorithms designed to deliver particular content tailored to each individual user based on their data, including their demographics, geolocation, device, and search history. These algorithms and content curation amount to Defendants' own content creation.

25.    Furthermore, Defendants own and operate a separate pornographic website titled cumlouder.com. Through the "cumlouder" brand, Defendants recruit pornographic models, produce pornographic videos, and create pornographic content that is uploaded to superporn.com.

---

[3] Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).

26.    Defendants also use data mining and geolocation to deliver tailored digital advertising to the user.[4] Using these tools, Defendants also display their entire platform, including all the webpages, video titles, terms and conditions, privacy policies, etc., in English when a U.S. user accesses the website, despite the official language of the website being Spanish.[5]

27.    Furthermore, Defendants have contracted with Cloudflare, a content delivery network ("CDN"), to enhance the speed and performance of superporn.com for users in and around Olathe, Kansas.

28.    A CDN is a network of servers that cache content closer to a website's users, enabling faster and more reliable communication between a website and its end users despite the parties' geographic distance.[6] This network is organized into strategically placed points of presence ("PoPs") in high traffic internet areas worldwide. These PoPs house edge servers which deliver cached content to nearby users.[7]

29.    In simpler terms, a CDN replicates a website's original content and distributes these copies across its global network of PoPs. By placing these copies in edge servers geographically closer to users, a CDN significantly enhances speed, reliability, and the overall user experience for a website.

---

[4] Superporn, *Privacy Policy*, https://www.superporn.com/legal#privacy (last visited Jan. 23, 2025).

[5] Superporn, *Terms of Service*, https://www.superporn.com/tos (last visited Jan. 23, 2025).

[6] Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

[7] CacheFly, *Why Points of Presence (PoPs) Are Pivotal for Optimal CDN Performance*, https://www.cachefly.com/news/why-points-of-presence-pops-are-pivotal-for-optimal-cdn-performance/#:~:text=Each%20PoP%20contains%20a%20group,deliver%20what%20you%20need%20quickly (last visited Dec. 18, 2024).

30.    For websites hosting high-definition videos or streaming content, a CDN ensures efficient and uninterrupted playback for users near those edge servers. This service is critical for any website as users tend to drop off quickly when a website slows down.[8]

31.    In the present case, Defendants have contracted with Cloudflare to cache and serve the content hosted on superporn.com through edge servers located in Kansas City, Missouri, less than 25 miles from Plaintiff's domicile.

32.    Defendant TechPump even advertises that is has "developed [its] own CDN infrastructure," to sustain millions of daily visits to its websites while "ensuring speed, low latency, and optimized costs" which "enables [it] to provide a seemless user experience and optimial performance on [its] platforms."[9]

33.    Furthermore, Defendant's do a substantial amount of business in Kansas through superporn.com as they engage in selling subscriptions to Kansas Citizens. Additionally, they use geo targeted advertising to direct advertisements to users located in Kansas. Furthermore, they monetize web traffic originating from Kansas.

34.    Despite expressly aiming their website at Kansas citizens, Defendants failed, and continue to fail in keeping superporn.com compliant with Kansas law, which requires pornographic websites to employ age verification measures, either through a "commercially available database" that can verify age and identity, or "any other commercially reasonable method of age and identity verification." K.S.A. § 50-6,146(a)(1)-(2).

35. Defendants failed to implement reasonable age verification methods as mandated by K.S.A. § 50-6,146(a)(1)-(2) to verify the age of its end users on superporn.com. Instead, minors

---

[8] Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

[9] Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).

who visit the website are either immediately presented with sexual material harmful to minors with no form of verification needed, or they are simply asked to complete the trivial step of clicking an "I AGREE" button, which ostensibly verifies the user is over the age of 18. The age verification methods used by superporn.com cannot be said to verify anything at all, and wholly fail to comply with the requirements of Kansas law.

### *Q.R.'s Access to superporn.com*

36. Q.R. is a 14-year-old minor child who is domiciled in Olathe, Kansas with his natural mother and next friend Jane Doe. Jane Doe has taken steps to monitor her son's devices for pornography as she recognizes the danger that such material poses to boys like Q.R. during this developmental stage of his life.

37. However, on August 12, 2024, Q.R. found Jane Doe's old laptop in her closet. She had stored the device there a couple of years ago after purchasing a new laptop and had since forgotten about it. Unfortunately for Q.R., it was still in working condition.

38. That night Q.R., using his mother's old laptop, had unfettered access to the internet and began searching for pornography.

39. During the unfolding weeks, Q.R. was able to access superporn.com on 136 different instances:

       a.  twelve instances on September 10, 2024;

       b.  thirteen instances on September 11, 2024;

       c.  eighteen instances on September 12, 2024;

       d.  fourteen instances on September 14, 2024;

       e.  four instances on September 19, 2024;

       f.  twenty instances on September 26, 2024;

g.  thirty-four instances on September 29, 2024;

h.  six instances on September 30, 2024;

i.  two instances on October 02, 2024; and

j.  thirteen instances on October 04, 2024.

40.     Q.R. has been harmed by Defendants' own acts and/or omissions as they failed to employ age verification as mandated by Kansas law on superporn.com.

41.     In the alternative of, or in addition to the above paragraph Plaintiff was harmed as he was able to view content harmful to minors that was hosted on Defendants' website. Had Defendants employed reasonable age verification techniques, as required by Kansas law, Q.R. would not have been able to view such material.

### *Defendant's Further Purposefully Avail to Kansas Law*

42.     Since being notified by Plaintiff regarding their above-mentioned acts and/or omissions, Defendants have attempted to comply with Kansas' restrictions on content harmful to minors by seemingly removing superporn.com from Kansas altogether. Please see the below true and correct screen capture taken on January 24, 2025, illustrating this.



43.    It should be noted that Defendants' new landing page for Kansas citizens contains content that is harmful to minors as it has depictions of a vagina, breasts, buttocks, and sex acts.

44.    However, this attempt at compliance with Kansas has a fatal flaw – superporn.com can still be accessed in Kansas by a cell phone using mobile data. Indeed, all a person has to do is turn off their Wi-Fi, and they can still access Defendants' pornographic content without being asked to verify their age.

45.    Given that an overwhelming majority of pornography in the United States is viewed using a cellular device,[10] Defendants know, or through the exercise of reasonable care should know, that this haphazard attempt to comply with Kansas law is woefully inadequate.

46.    This subsequent and inadequate effort to comply with Kansas Law demonstrates that Defendants have further purposefully availed themselves to Kansas jurisdiction.

---

[10] Curtis Silver, *Pornhub's Tech Review Shows the Apple vs. Android Battle for Porn Traffic*, Forbes (Apr. 8, 2021), https://www.forbes.com/sites/curtissilver/2021/04/08/pornhubs-tech-review-shows-the-apple-vs-android-battle-for-porn-traffic/#:~:text=That%20makes%20sense%20as%20in,That%2080%25%20is%20worldwide.

47.     Furthermore, Defendant TechPump currently advertises its own age verification technology for third-party website customers. This new product is called "PumpVerify" and Defendant TechPump describes it as, "the ultimate age verification solution. Our technology combines artificial intelligence and multiple authentication methods to ensure secure and compliant access on digital platforms."[11] The fact that TechPump has designed and now purports to sell such a product demonstrates that it could have employed such age **verification** technology on SuperPorn.com when required to do so by Kansas law but instead, Defendants refused to do so at the expense of Plaintiff.

48.     Thus, Defendants continue to flout Kansas law despite developing their own age verification technology to sell to others.

---

[11] Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).

## **Count 1**

### *Plaintiff Q.R.'s Claim Against Defendants Techpump Solutions SL and John Doe d/b/a superporn.com for Their Violations of K.S.A. § 50-6,146*

49.     Plaintiff incorporates all the preceding paragraphs here by reference.

50.     Defendants are commercial entities that knowingly share or distribute materials that are harmful to minors on superporn.com. In conjunction with this claim, or in the alternative, Defendants knowingly host superporn.com.

51.     As such, under Kansas law, Defendants have a duty to verify that any person attempting to access superporn.com, who is a resident of Kansas or located in Kansas at the time of such attempted access, is 18 years of age or older.

52.     Defendants failed to implement reasonable age verification methods regarding access to superporn.com as required by K.S.A. § 50-6,146(a)(1)-(2).

53.     As Plaintiff, who is a resident of Kansas and was located in Kansas at all times relevant to this complaint, was able to access superporn.com on 136 separate instances, Defendants are each liable for 136 separate violations of K.S.A. § 50-6,146.

54.     Consequently, pursuant to K.S.A. § 50-6,146 Plaintiff prays for judgment against Defendants in an amount in excess of $75,000.00 for:

      a.  actual damages resulting from Q.R.'s access to material that is harmful to minors, including but not limited to past medical expenses, future medical expenses, past and future lost services and disability, past and future pain, suffering, and disability;

      b.  statutory damages in an amount not less than $50,000 per violation, regardless of whether any third-party content hosted by Defendants harmed Plaintiff;

      c.  reasonable attorney fees and costs of this action; and

      d.  for such other and further relief as this Court deems just and equitable.

## Count 2

***Plaintiff Q.R.'s Claim Against Defendants Techpump Solutions SL and John Doe d/b/a superporn.com for Unconscionable Acts or Practices.***

55. Plaintiff incorporates all the preceding paragraphs here by reference.

56. For purposes of the remedies and penalties provided by the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, pursuant to K.S.A. § 50-6,146(d)(1), Defendants are deemed a supplier and Plaintiff is deemed a consumer.

57. Defendants knowingly took advantage of Plaintiff's inability to reasonably protect his interests due to his age, limited knowledge of the internet, ignorance of available protections for minors, and inability to understand the terms and conditions of use. Defendants were aware that minors like Plaintiff may not understand the terms and conditions of their sites, the legal protections that should have been available to them, and/or the harm associated with viewing content that is harmful to minors.

58. Despite this, Defendants shared, distributed, and/or knowingly hosted sexually explicit material on superporn.com, without implementing reasonable age verification methods restricting access to superporn.com as required by K.S.A. § 50-6,146(a)(1)-(2).

59. As Plaintiff, who is a resident of Kansas and was located in Kansas at all relevant times, was able to access superporn.com on 136 separate instances, Defendants have each committed 136 separate violations of K.S.A. § 50-6,146, which holds that each such violation is an unconscionable act or practice under the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq*.

60. As such, Defendants have each committed 136 separate violations of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq*., including, but not limited to, violations of K.S.A. § 50-627.

61. Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, for:

    a.   Damages, or civil penalties pursuant to K.S.A. § 50-636(a) of not more than $10,000 per violation of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, whichever is greater, regardless of whether any third-party content hosted by Defendants harmed Plaintiff;

    b.   reasonable attorney fees and costs of this action pursuant to K.S.A. § 50-634(e); and

    c.   for such other and further relief as this Court deems just and proper.

## Count 3

### *Plaintiff Q.R.'s Claim of Negligence Against Defendants Techpump Solutions SL and John Doe d/b/a superporn.com*

62.    Plaintiff incorporates all the preceding paragraphs here by reference.

63.    At all times relevant to this complaint, Defendants owed a duty to Plaintiff to use that degree of care exercised by a reasonably careful designer, manufacturer, seller, distributor, and/or installer in the same business as Defendants.

64.    Plaintiff contends that Defendants are negligent and 100% at fault for Plaintiff's damages by failing to implement reasonable age verification methods on their website superporn.com so as to protect minors, such as Plaintiff, from their content which is considered to be harmful to minors.

65.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue in the future to suffer the following damages:

    a.   Pain, suffering, disability, disfigurement, and mental anguish;

    b.   Psychological injury;

     c.   Past and future loss of enjoyment and pleasure of living; and

     d.   Past and future expenses of necessary medical care and treatment.

66.     All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

67.     Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

## Count 4

### Plaintiff Q.R.'s Claim of Negligence Per Se Against Defendants Techpump Solutions SL and John Doe d/b/a superporn.com

68.     Plaintiff incorporates all the preceding paragraphs here by reference.

69.     Defendants have a duty to comply with Kansas law.

70.     Defendants breached that duty by failing to implement reasonable age verification methods as required by K.S.A. § 50-6,146(a)(1)-(2).

71.     K.S.A. § 50-6,146 was enacted with the goal of protecting minors in Kansas from being harmed by content that is harmful to minors, such as pornography.

72.     Plaintiff, who is a minor, is therefore in the class of persons K.S.A. § 50-6,146 was intended to protect. Furthermore, Plaintiff's exposure to pornography on superporn.com and his resulting damages are the type of harm K.S.A. § 50-6,146 was enacted to prevent.

73.     Accordingly, Defendants are negligent per se.

74.     As a direct and proximate result of Defendants' acts and omissions in this regard, Plaintiff has suffered and will continue in the future to suffer the following damages:

     a.   Pain, suffering, disability, disfigurement, and mental anguish;

     b.   Psychological injury;

c. Past and future loss of enjoyment and pleasure of living; and

d. Past and future expenses of necessary medical care and treatment.

75. All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

76. Consequently, Plaintiff prays for a judgment against Defendants in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

**Demand for a jury trial**

77. In accordance with applicable Kansas law, Plaintiff Q.R., by and through his natural mother and next friend, Jane Doe respectfully demands a trial by a jury of twelve persons of all issues raised in his Complaint.

Dated: January 16, 2025

Respectfully submitted,

 /s/ Joshua W. Ruhlmann
Michael J. Wyatt          (#23260)
Joshua W. Ruhlmann       (#29778)
MANN WYATT TANKSLEY
201 E. 1st Ave.
Hutchinson, KS  67504-1202
(620) 662-2400
(620) 662-2443 (Fax)
mike@mannwyatt.com
josh@mannwyatt.com

and

Danielle Pinter*
Benjamin W. Bull*
Christen M. Price*
Victoria Hirsch*
Khari James*
NATIONAL CENTER ON
SEXUAL EXPLOITATION

1201 F St., NW, Suite 200
Washington, DC 20004
P: 202-393-7245
E: dpinter@ncoselaw.org
bbull@ncose.com
cprice@ncoselaw.org
vhirsch@ncoselaw.org
kjames@ncoselaw.org

*Pro hac vice motions forthcoming*

*Attorneys for Plaintiff*