MANN WYATT TANKSLEY
201 E 1st Ave.
Hutchinson, KS 67501
(620) 662-2400
(620) 662-2443 (Fax)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25 CV 01095-HLT-BGS |
| | ) |
| PUMP LAB, SL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## FIRST AMENDED COMPLAINT[1]

For his cause of action against Defendant Pump Lab, SL, Plaintiff Q.R., a minor, by and through his natural mother and next friend Jane Doe alleges upon personal knowledge as to facts relating to him and upon reasonable information and belief otherwise, and states:

### Parties

1. Plaintiff Q.R. ("Plaintiff") is a minor child who is domiciled in Olathe, Johnson County, Kansas. Plaintiff's claims in this matter are brought by and through his natural mother and next friend, Jane Doe, with whom he resides. At all times relevant to this First Amended Complaint ("FAC"), Plaintiff was physically present in the state of Kansas.

2. Defendant Pump Lab, SL ("Defendant" or "Pump Lab") is a foreign commercial entity incorporated in Asturias, Spain, with its principal office located at Plaza Seis de Agosto N°6-2°,

---

[1] As allowed by Fed. R. Civ. P. 15(a)(1)(B), Plaintiff amends their Complaint as a matter of course.

33206 Gijon (Asturias), Spain. Upon information and belief, Defendant may be served with process at this address.

3.   During the period relevant to the events alleged herein, the website www.superporn.com (the "Superporn Website") was owned, operated, and hosted by Techpump Solutions, SL. However, as the result of a corporate restructuring approximately one year after the events giving rise to this action, ownership and operation of the Superporn Website were transferred to Defendant Pump Lab, SL, which now owns and operates the Superporn Website and is liable for Techpump Solutions, SL's acts and omissions concerning the Superporn Website.

## Jurisdiction and Venue

4.   This Court may properly exercise personal jurisdiction over all parties. This Court has subject matter jurisdiction over this case. Venue is proper in this forum.

### *Personal Jurisdiction*

5.   This Court has personal jurisdiction over Plaintiff as he is domiciled in Kansas.

6.   This Court may properly exercise personal jurisdiction over Defendant under K.S.A. § 60-308(b)(1)(A) as Defendant, at all times relevant to this Complaint, has engaged in business in the state of Kansas via consumer transactions. Defendant is further subject to this Court's jurisdiction pursuant to the Kansas Consumer Protection Act, specifically K.S.A. § 50-638(a).

7.   This Court may properly exercise personal jurisdiction over Defendant under K.S.A. § 60-308(b)(1)(B) as it has committed a tortious act within the State by allowing Plaintiff, who is a minor, to access content that is harmful to minors without employing reasonable age verification as required by K.S.A. § 50-6,146.

8.   In the alternative of, or in addition to the above paragraph, this Court may properly exercise personal jurisdiction over Defendant under K.S.A. § 60-308(b)(1)(G)(i)-(ii) as Defendant caused

an injury to Plaintiff, who is a minor, through an act or omission which took place outside of the state of Kansas while: (i) they were engaged in solicitation or service activities in the state of Kansas; and/or (ii) products, materials or things processed, serviced or manufactured by Defendant anywhere were used or consumed in the state of Kansas in the ordinary course of trade or use.

9.   This Court may properly exercise personal jurisdiction over Defendant under K.S.A. § 60-308(b)(1)(L) as Defendant maintains minimum contacts with Kansas such that maintaining this lawsuit does not offend traditional notions of fair play and substantial justice.

### *Subject Matter Jurisdiction*

10. This Court has subject matter jurisdiction over the cause of action under 28 U.S.C. § 1332(a) given the parties' diversity of citizenship and the fact that the amount in controversy exceeds $75,000.00.

11. This Court has subject matter jurisdiction over this case pursuant to the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.* because Defendant has engaged in consumer transactions in the state of Kansas.

### *Venue*

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 2255(c) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## Background Facts

13. Defendant intentionally operates a global network of pornographic internet websites and platforms, including the Superporn Website, for which the video feeds linked by those sites originate from media servers operated and/or controlled by Defendant.[2]

14. The Superporn Website is a pornography website where Defendant knowingly shares or distributes material containing nudity, sexual conduct, sexual excitement and/or sadomasochistic abuse.[3] Such material appears on 25% or more of the Superporn Website's web pages when viewed on said website during any calendar month. This material is considered "harmful to minors" as, when taken as a whole, an average adult person and/or a reasonable person would find such material: (1) has a predominant tendency to appeal to a prurient interest in sex to minors; (2) is patently offensive to prevailing standards in the adult community with respect to what is suitable for minors; and (3) lacks serious literary, scientific, educational, artistic or political value for minors.

15. To illustrate this fact, Defendant describes the content on their website as: "The porn videos you like most sorted by categories. Free streaming of original porn series." *See* the below true and correct screen capture of Defendant's Google meta description taken on January 23, 2025:

---

[2] MAVISE – Database on Audiovisual Services, *European Audiovisual Observatory*, https://mavise.obs.coe.int/advanced-search?provider=19908 (last visited Jan. 23, 2025).
[3] True and correct screen captures of Defendant's website http://www.superporn.com taken on Feb. 05, 2025, are attached as Exhibit A to Plaintiff's Complaint (Doc. 1) and incorporated by reference herein.



16.     At all times relevant, Defendant provided the technology and resources necessary to store and maintain the electronic files and applications associated with the Superporn Website on a computer server in order for said website to be accessible via the internet.

### *Defendant's Targeting of U.S. and Kansas Citizens*

17.     Defendant has expressly aimed the Superporn Website at United States citizens, and as relates to minor Plaintiff Q.R., the users within the state of Kansas.

18.     Defendant has gone to great lengths to categorize its pornographic content on the Superporn Website so users can quickly search for and find the videos they desire.

19.     Typically, a pornographic website will sort its videos into categories based on the hashtags and earmarks placed on them by the content creator/uploader. However, in the present case, Defendant goes the extra mile for its U.S. users on the Superporn Website by creating "Porn Series."

20.     A "Porn Series," as used by Defendant, is a collection of pornographic videos relating to a certain topic, scenario, or fetish that are "handpicked" and provided to users on the Superporn Website. *See* a below screen capture taken on January 23, 2025, showing Defendant's most popular "Porn Series" as of that date (obscene content has been censored):



21.     Users are then able to "follow" and "share" these series.

22.     According to the above, "SuperPorn US" is Defendant's most popular "Porn Series."

23.     According to Defendant, the "SuperPorn US" series is expressly curated and marketed by Defendant to users in the United States as Defendant "handpick[s] the top content for [their] US audience." Consistent with that representation, Defendant has "handpicked" and uploaded 2,992 videos into their "SuperPorn US Series" to target their "U.S. audience" and users like minor Q.R. in the state of Kansas. *See* the below true and correct screen capture, taken on January 23, 2025 (with obscene content censored) demonstrating this targeting:



24.    "SuperPorn US" is Defendant's most popular "Porn Series" by a wide margin as it boasts over 45,000 followers. For reference, their second most popular series "The best fresh porn" has a little over 5,000 followers, and only has 1,168 videos uploaded to it. *See* the below true and correct screen capture taken on January 23, 2025 (obscene content has been censored):



25.    To accomplish its specific targeting of not only U.S. users, but users in identified states and regions of the U.S. as well, Defendant contracts with content delivery networks ("CDN"), to intentionally service and target users in the United States and, more specifically, Kansas. This targeting is directed to Kansas and/or the immediate region of which the Kansas forum is a part.

26.    A CDN is a network of servers that cache content closer to a website's users, enabling faster and more reliable communication between a website and its end users despite the parties' geographic distance.[4] This network is organized into strategically placed points of presence ("PoPs") in high traffic internet areas to service a specific geographic region, as opposed to "the

---

[4] Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

whole world" or "the United States." These PoPs physically house the edge servers which deliver cached content to nearby users, such as minor Plaintiff Q.R.[5]

27.    In simpler terms, a CDN replicates a website's original content and distributes these copies across its network of PoPs. By placing these copies in edge servers geographically closer to users, a CDN significantly enhances speed, reliability, and the overall user experience for a website. This network is chosen by a company like Defendant to accomplish the most effective communication with users in a particular targeted forum.

28.    For websites hosting high-definition videos or streaming content, a CDN ensures efficient and uninterrupted playback for users near those edge servers. This service is critical for any website as users tend to drop off quickly when a website slows down.[6]

29.    Given their desire to serve audiences in the United States and in even more specific regions of the United States, Defendant would naturally be incentivized to contract with a CDN to ensure their content is geographically closer to its targeted audiences.

30.    In the present case, Defendant uses at least two different CDNs to host the Superporn Website: (1) CDN77, which serves the site's images and videos, and (2) Cloudflare, which serves the site's infrastructure such as scripts and texts.[7]

31.    Regarding CDN77, the network's platform permits its customers to select the specific PoPs within its network where their content will be cached and delivered. By using

---

[5]    CacheFly, *Why Points of Presence (PoPs) Are Pivotal for Optimal CDN Performance*, https://www.cachefly.com/news/why-points-of-presence-pops-are-pivotal-for-optimal-cdn-performance/#:~:text=Each%20PoP%20contains%20a%20group,deliver%20what%20you%20need%20quickly (last visited Dec. 18, 2024).

[6]    Cloudflare, *What Is a CDN?*, https://www.cloudflare.com/learning/cdn/what-is-a-cdn/ (last visited Dec. 18, 2024).

[7]    *See* **Ex. A**, Declaration of Bassem Banafa at ¶ 11.

CDN77, Defendant has the ability to select the locations from which the Superporn Website's images and videos will be cached and served to users.[8]

32.    Here, Defendant selected the CDN77 PoPs that directly cover Kansas and the surrounding region, thereby intending that the Superporn Website's content would be cached and delivered within this forum. The image below reflects CDN77's available PoPs a user may select and pay for, including those serving Kansas such as Denver, Dallas, and Chicago:[9]



33.    As the above makes clear, Defendant has _intentionally chosen_ to route traffic through CDN77's PoPs located in Denver, Dallas, and Chicago to target the Kansas forum, and/or the immediate region of which the Kansas forum is a part.

34.    Regarding Cloudflare, the network has a PoP located in Kansas City, Missouri, less than 25 miles from minor Plaintiff Q.R., through which Defendant has intentionally chosen to route it the Superporn Website's infrastructure.

---

[8] _Id_. at 12.
[9] _See_ Mike Williams, _CDN77 review: A straightforward novice-friendly CDN you can set up in minutes_, TechRadar (Feb. 19, 2021), https://www.techradar.com/reviews/cdn77.

35.    By intentionally choosing to route it's website's infrastructure through Kansas City, Missouri, Defendant is expressly aiming it's content at the Kansas Forum.

36.    In addition to CDN77 and Cloudflare, Defendant publicly represents that it has "developed [its] own CDN infrastructure," to sustain millions of daily visits to its websites while "ensuring speed, low latency, and optimized costs" which "enables [it] to provide a seamless user experience and optimal performance on [its] platforms."[11]

37.    Thus, upon information and belief, Defendant has an additional CDN infrastructure under their ownership and/or control. The nature, location, and scope of this CDN infrastructure is within the exclusive knowledge of Defendant. This infrastructure is used to expressly aim the Superporn Website at the Kansas forum.

38.    The full extent of how CDN77, Cloudflare, and Defendant's own CDN infrastructure, are being used to target the Kansas forum, and/or the immediate region of which the Kansas forum is a part, is within the exclusive knowledge of Defendant, and will be the subject of targeted jurisdictional discovery.

### *Defendant's Development of its Content*

39.    Defendant advertises itself "as a leader in traffic management, SEO, content platforms, and intellectual property. For over two decades, [Pumplabs] ha[s] perfected strategies to position websites in strategic niches, maximizing monetization and large-scale content distribution."[12] Upon information and belief, Defendant accomplishes its SEO services, monetization methods, and content creation (such as "Porn Series" described above) through its own proprietary algorithms designed to deliver particular content tailored to each individual user

---

[11] *See* Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).
[12] *See* Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).

based on their data, including their demographics, geolocation, device, and search history. These algorithms and content curation amount to Defendant's own content creation.

40.     Furthermore, Defendant owns and operates a separate pornographic website titled cumlouder.com. Upon information and belief, Defendant recruits pornographic models, produces pornographic videos, and creates pornographic content through the "cumlouder" brand that is then uploaded to the Superporn Website.

41.     Defendant also uses data mining and geolocation to deliver tailored digital advertising to the user.[13] Using these tools, Defendant also displays their entire platform, including all the webpages, video titles, terms and conditions, privacy policies, etc., in English when a U.S. user accesses the website, despite the official language of the website being Spanish.[14]

### Defendant's Commercial Exploitation of Kansas Users Through Cookies

42.     Upon information and belief, when Q.R., a minor residing in Kansas, accessed the Superporn Website, Defendant deployed tracking, analytic, and advertising cookies onto his device.[15]

43.     A cookie is a data file that a website uploads to a user's device that allows the website to recognize the device, monitor activity on the site, and collect information about the user such as browsing data and geolocation.[16]

44.     Upon information and belief, when Defendant deliberately installed cookies on Q.R.'s device, Defendant immediately received technical information associated with that device, including the city and state from which Q.R. was accessing the Superporn Website.[17]

---

[13] Superporn, *Privacy Policy*, https://www.superporn.com/legal#privacy (last visited Jan. 23, 2025).
[14] Superporn, *Terms of Service*, https://www.superporn.com/tos (last visited Jan. 23, 2025).
[15] *See* **Ex. A**, Declaration of Bassem Banafa at ¶¶ 3–4
[16] *Id*. at ¶ 2; 6
[17] *Id*. at ¶¶ 5-7

45.     Upon information and belief, the data generated through these cookies was then transmitted to third party advertising networks for profit.[18]

46.     By intentionally collecting data from minor Plaintiff Q.R., who Defendant knew was located in Kansas, and then monetizing that data by transmitting it to advertising networks for commercial use, Defendant has intentionally directed commercial and/or internet activity towards the State of Kansas.

47.     The full extent of Defendant's geolocation capabilities, user profiling, advertising segmentation, and revenue generated from Kansas-based users is information within Defendant's possession and control and will be the subject of targeted jurisdictional discovery.

### Q.R.'s Access to the Superporn Website and Defendant's Ongoing Failure to Implement Age Verification

48. Q.R. is a 14-year-old minor child who is domiciled in Olathe, Kansas with his natural mother and next friend Jane Doe. Jane Doe has taken steps to monitor her son's devices for pornography as she recognizes the danger that such material poses to boys like Q.R. during this developmental stage of his life.

49. However, on August 12, 2024, Q.R. found Jane Doe's old laptop in her closet. She had stored the device there a couple of years ago after purchasing a new laptop and had since forgotten about it. Unfortunately for Q.R., it was still in working condition.

50. That night Q.R., using his mother's old laptop, had unfettered access to the internet and began searching for pornography.

51. During the unfolding weeks, Q.R. was able to access the Superporn Website on 136 different instances:

---

[18] *Id*. at ¶ 8

    a.   twelve instances on September 10, 2024;

    b.   thirteen instances on September 11, 2024;

    c.   eighteen instances on September 12, 2024;

    d.   fourteen instances on September 14, 2024;

    e.   four instances on September 19, 2024;

    f.   twenty instances on September 26, 2024;

    g.   thirty-four instances on September 29, 2024;

    h.   six instances on September 30, 2024;

    i.   two instances on October 02, 2024; and

    j.   thirteen instances on October 04, 2024.

52.    Plaintiff was harmed as he was able to access the Superporn Website. Had Defendant employed reasonable age verification techniques, as required by Kansas law, Q.R. would not have been able to access the Superporn Website.

53.    Since being notified by Plaintiff regarding their above-mentioned acts and/or omissions, Defendant has ostensibly attempted to comply with Kansas' restrictions on content harmful to minors by seemingly removing the Superporn Website from Kansas altogether. *See* the below true and correct screen capture taken on January 24, 2025, illustrating this.



54.     Significantly, Defendant took this action _specifically_ for persons seeking to access the website in Kansas. The website still remains accessible in other states, highlighting Defendant's purposeful targeting of activity to Kansas, related to the porn on its website.

55.     However, this superficial attempt at compliance with Kansas law has a fatal flaw – the Superporn Website can still be accessed in Kansas by a cell phone using mobile data. Indeed, all a person has to do is turn off their Wi-Fi, and they can still access Defendant's pornographic content without being asked to verify their age, even if their cellular IP address indicates that the device is in Kansas.[20]

56.     Given that an overwhelming majority of pornography in the United States is viewed using a cellular device, Defendant knows, or through the exercise of reasonable care should know, that its haphazard attempt to comply with Kansas law is woefully inadequate.[22]

---

[20] _See_ **Ex. B**, Declaration of Chad Cornish.
[22] Curtis Silver, _Pornhub's Tech Review Shows the Apple vs. Android Battle for Porn Traffic_, Forbes (Apr. 8, 2021), https://www.forbes.com/sites/curtissilver/2021/04/08/pornhubs-tech-review-shows-the-apple-vs-android-battle-for-porn-traffic/#:~:text=That%20makes%20sense%20as%20in,That%2080%25%20is%20worldwide.

57.     This subsequent and inadequate effort to comply with Kansas Law demonstrates that Defendant has further purposefully availed themselves to Kansas jurisdiction.

58.     Furthermore, Defendant currently advertises its own age verification technology for third-party website customers. This new product is called "PumpVerify" and Defendant describes it as, "the ultimate age verification solution. Our technology combines artificial intelligence and multiple authentication methods to ensure secure and compliant access on digital platforms."[23]

59.     The fact that Defendant has designed and now purports to sell such a product demonstrates that it could have employed such age verification technology on the Superporn Website when required to do so by Kansas law. Instead, Defendant refused, and continues to refuse to follow the law at the expense of Plaintiff and many other children.

## Count 1

### Plaintiff Q.R.'s Claim Against Defendant Pump Lab SL for Their Violations of K.S.A. § 50-6,146

60.     Plaintiff incorporates all the preceding paragraphs here by reference.

61.     Defendant is a commercial entity that knowingly share or distribute materials that are harmful to minors on superporn.com. In conjunction with this claim, or in the alternative, Defendant knowingly host superporn.com.

62.     As such, under Kansas law, Defendant has a duty to verify that any person attempting to access superporn.com, who is a resident of Kansas or located in Kansas at the time of such attempted access, is 18 years of age or older.

---

[23] Techpump, https://www.techpump.com/ (last visited Jan. 23, 2025).

63.     Defendant failed to implement reasonable age verification methods regarding access to superporn.com as required by K.S.A. § 50-6,146(a)(1)-(2).

64.     As Plaintiff, who is a resident of Kansas and was located in Kansas at all times relevant to this complaint, was able to access superporn.com on 136 separate instances, Defendant is liable for 136 separate violations of K.S.A. § 50-6,146.

65.     Consequently, pursuant to K.S.A. § 50-6,146 Plaintiff prays for judgment against Defendant in an amount in excess of $75,000.00 for:

a.  actual damages resulting from Q.R.'s access to material that is harmful to minors, including but not limited to past medical expenses, future medical expenses, past and future lost services and disability, past and future pain, suffering, and disability;

b.  statutory damages in an amount not less than $50,000 per violation, regardless of whether any third-party content hosted by Defendant harmed Plaintiff;

c.  reasonable attorney fees and costs of this action; and

d.  for such other and further relief as this Court deems just and equitable.

## Count 2

***Plaintiff Q.R.'s Claim Against Defendant Pump Lab SL for Unconscionable Acts or Practices.***

66.     Plaintiff incorporates all the preceding paragraphs here by reference.

67.     For purposes of the remedies and penalties provided by the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, pursuant to K.S.A. § 50-6,146(d)(1), Defendant is deemed a supplier and Plaintiff is deemed a consumer.

68.     Defendant knowingly took advantage of Plaintiff's inability to reasonably protect his interests due to his age, limited knowledge of the internet, ignorance of available protections for minors, and inability to understand the terms and conditions of use. Defendant was aware that minors like Plaintiff may not understand the terms and conditions of their sites, the legal

protections that should have been available to them, and/or the harm associated with viewing content that is harmful to minors.

69.     Despite this, Defendant shared, distributed, and/or knowingly hosted sexually explicit material on superporn.com, without implementing reasonable age verification methods restricting access to superporn.com as required by K.S.A. § 50-6,146(a)(1)-(2).

70.     As Plaintiff, who is a resident of Kansas and was located in Kansas at all relevant times, was able to access superporn.com on 136 separate instances, Defendant has committed 136 separate violations of K.S.A. § 50-6,146, which holds that each such violation is an unconscionable act or practice under the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq*.

71. As such, Defendant has committed 136 separate violations of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq*., including, but not limited to, violations of K.S.A. § 50-627.

72. Consequently, Plaintiff prays for a judgment against Defendant in an amount in excess of $75,000.00, for:

    a.  Damages, or civil penalties pursuant to K.S.A. § 50-636(a) of not more than $10,000 per violation of the Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*, whichever is greater, regardless of whether any third-party content hosted by Defendant harmed Plaintiff;

    b.  reasonable attorney fees and costs of this action pursuant to K.S.A. § 50-634(e); and

    c.  for such other and further relief as this Court deems just and proper.

### Count 3

***Plaintiff Q.R.'s Claim of Negligence Against Defendant Pump Lab SL***

73.     Plaintiff incorporates all the preceding paragraphs here by reference.

74.     At all times relevant to this complaint, Defendant owed a duty to Plaintiff to use that degree of care exercised by a reasonably careful designer, manufacturer, seller, distributor, and/or installer in the same business as Defendant.

75.     Plaintiff contends that Defendant is negligent and 100% at fault for Plaintiff's damages by failing to implement reasonable age verification methods on its website superporn.com so as to protect minors, such as Plaintiff, from their content which is considered to be harmful to minors.

76.     As a direct and proximate result of Defendant's negligence, Plaintiff has suffered and will continue in the future to suffer the following damages:

      a.  Pain, suffering, disability, disfigurement, and mental anguish;

      b.  Psychological injury;

      c.  Past and future loss of enjoyment and pleasure of living; and

      d.  Past and future expenses of necessary medical care and treatment.

77.     All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

78.     Consequently, Plaintiff prays for a judgment against Defendant in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

<u>**Count 4**</u>

***Plaintiff Q.R.'s Claim of Negligence Per Se Against Defendant Pump Lab SL***

79.    Plaintiff incorporates all the preceding paragraphs here by reference.

80.    Defendant has a duty to comply with Kansas law.

81.    Defendant breached that duty by failing to implement reasonable age verification methods as required by K.S.A. § 50-6,146(a)(1)-(2).

82.    K.S.A. § 50-6,146 was enacted with the goal of protecting minors in Kansas from being harmed by content that is harmful to minors, such as pornography.

83.    Plaintiff, who is a minor, is therefore in the class of persons K.S.A. § 50-6,146 was intended to protect. Furthermore, Plaintiff's exposure to pornography on superporn.com and his resulting damages are the type of harm K.S.A. § 50-6,146 was enacted to prevent.

84.    Accordingly, Defendant is negligent per se.

85.    As a direct and proximate result of Defendant's acts and omissions in this regard, Plaintiff has suffered and will continue in the future to suffer the following damages:

    a.  Pain, suffering, disability, disfigurement, and mental anguish;

    b.  Psychological injury;

    c.  Past and future loss of enjoyment and pleasure of living; and

    d.  Past and future expenses of necessary medical care and treatment.

86.    All of Plaintiff's injuries, disabilities, infirmities, and damages are permanent, painful, and progressive in nature and extent.

87.    Consequently, Plaintiff prays for a judgment against Defendant in an amount in excess of $75,000.00, Plaintiff's costs incurred herein, and for such other and further relief as this Court deems just and proper.

## Demand for a jury trial

88.    In accordance with applicable Kansas law, Plaintiff Q.R., by and through his natural

mother and next friend, Jane Doe respectfully demands a trial by a jury of twelve persons of all

issues raised in his Complaint.

Dated: March 3, 2026

<div style="margin-left:50%">

Respectfully submitted,

 /s/ Joshua W. Ruhlmann
Michael J. Wyatt          (#23260)
Joshua W. Ruhlmann      (#29778)
MANN WYATT TANKSLEY
201 E. 1st Ave.
Hutchinson, KS  67504-1202
(620) 662-2400
(620) 662-2443 (Fax)
mike@mannwyatt.com
josh@mannwyatt.com

-and-

Danielle Pinter*
Benjamin W. Bull*
Christen M. Price*
Victoria Hirsch*
Khari James*
NATIONAL CENTER ON
SEXUAL EXPLOITATION
1201 F St., NW, Suite 200
Washington, DC 20004
P: 202-393-7245
E: dpinter@ncoselaw.org
bbull@ncose.com
cprice@ncoselaw.org
vhirsch@ncoselaw.org
kjames@ncoselaw.org
*admitted through pro hac vice

-and-

Patrick J. Perotti, Esq.*
Dworken & Bernstein Co., L.P.A.

</div>

60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com
*Pro hac vice to be filed*

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 3, 2026, the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system to:

Christopher M. Joseph, #19778
JOSEPH, HOLLANDER & CRAFT LLC
1508 SW Topeka Blvd.
Topeka, KS 66612-1887
(785) 234-3272 Main
(785) 234-3610 Fax
cjoseph@josephhollander.com

-and-

Evan Fray-Witzer (amitted pro hac vice)
CIAMPA FRAY-WITZER, LLP
101 Federal St., Suite 1900
Boston, MA 02110
(617) 426-0000
(617) 507-8043 (facsimile)
Evan@CFWLegal.com

                                  */s/Joshua W. Ruhlmann*
                                    Joshua W. Ruhlmann