**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| Q.R. a minor, by and through his natural mother and next friend JANE DOE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-CV-01095-HLT-BGS |
| | ) | |
| Pump Lab, SL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PUMP LAB SL'S REPLY IN SUPPORT OF MOTION TO DISMISS**

In the immortal words of Gertrude Stein: "There is no there there."

In the face of Defendant Pump Lab, SL's Motion to Dismiss for lack of personal jurisdiction, Plaintiff does not argue that Pump Lab took some action aimed at the forum that subjects it to personal jurisdiction here, but rather that Pump Lab *had the ability* to take such actions. This is not nearly enough. Moreover, the action that Plaintiff claims Pump Lab had the ability to take – speeding internet traffic to an entire region of the country through the use of a third-party Content Delivery Network ("CDN") – would not provide for personal jurisdiction in *Kansas*, even if Pump Lab had taken advantage of this regional ability (which it has established, by unrefuted sworn affidavit, not to have done).

**ARGUMENT**

I.    Plaintiff's Allegations Concerning the Use of a Third-Party CDN Are Insufficient.

Throughout his Opposition, Plaintiff refers to unsupported allegations made in his complaint, asserting that the mere fact that he has made such allegations is sufficient to meet his burden. This is incorrect. The well-pled facts of a complaint (as opposed to conclusory allegations) are only "taken as true to the extent that they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Shrader v. Biddinger*, 633 F.3d

1235, 1248 (10th Cir. 2011)("even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit (here, based on personal knowledge of the party with direct access to the operative facts).")

With respect to Plaintiff's main argument in his opposition – that Pump Lab utilized a third-party CDN to speed content to Kansas – Plaintiff's reliance on nothing more than his Complaint is fatal.  Specifically, Plaintiff points only to his allegation that "Defendant intentionally selected edge servers in the immediate region surrounding Kansas, that is Denver, Dallas, and Chicago." Doc. 58, pp. 4-5. Even if the Court were to accept this allegation as true, there is no way to make the leap that Plaintiff asks the Court to make, namely that the "intentional selection" of servers in "Denver, Dallas, and Chicago" constitutes the intentional targeting of website visitors from *Kansas*.[1]

Moreover, Plaintiff misleadingly claims that Pump Lab "has not controverted these allegations" (of intentionally selecting servers in those locations) by selectively quoting the Declaration of Borja Mera Urrestarazu. Plaintiff quotes Mr. Urrstarazu as saying "I do not know if CDN77 actually offers this ability or not."  The full quote, however, is: "Mr. Banafa also claims that CDN77 allows its customers to choose which locations they want to prioritize for content delivery services. **Although I do not know if CDN77 actually offers this ability or not, I do know that Pump Lab does not use content delivery networks to prioritize content delivery to Kansas or any other specific location for that matter.** As I stated above, Pump Lab uses CDN77's services to speed content delivery to *all* locations." Doc. 52-1, ¶29 (emphasis added).

---

[1] Denver, CO is 597 miles from Olathe, KS; Dallas, TX is 531 miles; and Chicago is 532 miles.

This is not a situation where there are competing factual allegations supported by affidavit. The most that Plaintiff's "expert,"[2] Mr. Banafa was able to say is that CDN77 *offers the ability* to prioritize content deliver to certain regions of the country, not that Pump Lab utilized this feature (much less utilized it to speed content to Kansas). Pump Lab has provided unrebutted sworn testimony that it "does not use content delivery networks to prioritize content delivery to Kansas or any other specific location for that matter" and, as such, even if Plaintiff had actually alleged to the contrary in his Complaint, it would not be an allegation that the Court would take as true.

II.      Plaintiff's Repetition of Other Minor Factors Does Not Change the Analysis.

After discussing CDN77, Plaintiff makes similar arguments with respect to two[3] other CDN's that Plaintiff argues *could have been* used to speed traffic to Kansas. Plaintiff then attempts to claim that factual disagreements – such as Plaintiff's allegation that Pump Lab uses Cloudflare for CDN purposes, which Pump Lab has denied – justify a denial of Pump Lab's motion (or the allowance of jurisdictional discovery). It does neither. Mr. Urrstarazu's affidavit is not equivocal:

> Having servers in or close to Kansas has never been a particular concern for Pump Lab. Our concern is that the Superporn Website be fast everywhere in the world where we have users. We do not make any special efforts to speed the delivery of content to Kansas as opposed to any other state in the United States or any other country or locality in the world. … Pump Lab does not use content delivery networks to prioritize content delivery to Kansas or any other specific location for that matter.

---

[2] Plaintiff attempts to obscure the fact that Mr. Banafa has no qualifications to render any of the opinions in his affidavit by claiming he is a "forensic investigator."  As shown in Pump Lab's Memorandum of Law, Mr. Banafa is a forensic *accountant* who lacks any experience or training in internet infrastructure. The fact that Plaintiff made no attempt to explain Mr. Banafa's "qualifications" to the Court (and Mr. Banafa did not describe them in his affidavit) says all that needs to be said.

[3] Plaintiff quotes Techpump's website, which said that it had developed its own CDN infrastructure to suggest that the Superporn Website was utilizing that CDN infrastructure. The quote from the websie, however, was intended to be historical, talking about infrastructure that Techpump used more than a decade ago. As Mr. Urrstarazu's declaration states, the Superporn website obtains its CDN services from "a British Company, DataCamp Limited, which operates a CDN service called CDN77."  Borja Decl., ¶18.

Borja Decl., ¶¶ 19, 29.

In other words, even if Pump Lab had utilized some other CDN provider that offered the ability to specifically prioritize content delivery to Kansas (which it did not), it would be jurisdictionally, irrelevant because Pump Lab did not – in actuality – use any CDN to speed content to Kansas or any other specific location (as opposed to speeding delivery of content everywhere). This Court has already said as much – to this same Plaintiff – on two other occasions. *Q.R. v. ICF Tech., Inc.,* D. Kan. 25-cv-01093, Doc. 51, at pp. 9-10 ("Defendants' use of the CloudFront CDN also does little to move the needle, jurisdictionally speaking. …Defendants' intention that their users be able to access their sites from a wide geographic area is not - even coupled with the knowledge that revenue-generating traffic would be coming from Kansas - the same as purposefully directing their activities at Kansas. As with the ability to limit access from a particular geographic area, Plaintiff's argument proves too much. Defendants do not controvert that they use CloudFront to help them deliver content. Defendants also do not controvert that a CloudFront edge server is located close to the forum. But there is neither an allegation nor evidence that Defendants selected the locations of any of the edge servers CloudFront employs or otherwise customized those CDNs to direct traffic more efficiently to Kansas over other locations"); *Q.R. v. Titan Websites, Inc.,* D. Kan. 25-cv-01096, Doc. 44, at pp. 7-8 ("Technical steps taken to make a universally accessible website easier for all users to access no matter where they are located is no more purposeful direction than the act of setting up the website in the first place. And just like the act of setting up a website, were the indiscriminate use of a CDN or other technologies to indiscriminately facilitate content delivery enough, 'then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist.'")

Finally, Plaintiff argues that the website's general use of cookies (for all visitors to the website) is sufficient to establish personal jurisdiction over Pump Lab in Kansas. It is not. If it were, then nearly every modern website would be subject to world-wide universal jurisdiction based on the location of visitors to the website. This court and other federal courts have routinely rejected this argument. See, e.g., *Wells v. Facebook Inc.,* 2019 U.S. Dist. LEXIS 217168, at *1 (D. Kan. Dec. 18, 2019)(allegation that "[d]efendants['] website uploaded internet cookies to plaintiff['s] social media profiles that led to tracking, threats, and public backlash" insufficient to support personal jurisdiction); *Creative Photographers, Inc. v. Televisa, S.A.B.*, 763 F. Supp. 3d 618, 633, 634 (S.D.N.Y. 2025)(allegations that defendant's "websites acquire and utilize user data through interactive quizzes, cookies, device fingerprinting, behavioral profiling, data mining, cookie syncing, and third-party scripts" insufficient to support an exercise of personal jurisdiction); *Blockchange Ventures I GP, LLC v. Blockchange, Inc.,* 2021 U.S. Dist. LEXIS 17550, at *4 (S.D.N.Y. Jan. 29, 2021)("the mere accessibility of Defendant's website and its use of cookies is insufficient to constitute transacting business in New York.")

III.    Jurisdictional Discovery is Not a Free Pass to Engage in a Fishing Expedition.

Given that Plaintiff has not actually filed a Motion for Jurisdictional Discovery (and yet somehow relies heavily on its stated *intent* to do so in opposition to Pump Lab's Motion to Dismiss), Pump Lab will – for the most part – leave for another day its opposition to such a motion if one is ultimately filed.

**CONCLUSION**

For the reasons stated hereinabove and in Pump Lab's opening brief, Plaintiff's complaint must be dismissed for a lack of personal jurisdiction.

Respectfully submitted,

*Attorneys for Pump Lab, SL*

CIAMPA FRAY-WITZER, LLP
s/ Evan Fray-Witzer (pro hac vice)
101 Federal St., Suite 1900
Boston, MA 02110
(617) 426-0000
(617) 507-8043 fax
Evan@CFWLegal.com

BOSTON LAW GROUP, PC
s/ Val Gurvits (pro hac vice)
s/ Frank Scardino (pro hac vice)
825 Beacon Street, Suite 20
Newton Center, MA 02459 USA
(617) 928-1805
(617) 928-1802 fax
frank@bostonlawgroup.com
vgurvits@bostonlawgroup.com

JOSEPH, HOLLANDER & CRAFT LLC
s/ Christopher M. Joseph, #19778
s/ Carrie E. Parker, #24988
Joseph, Hollander & Craft LLC
1508 SW Topeka Blvd.
Topeka, KS 66612-1887
(785) 234-3272 Main
(785) 234-3610 Fax
cjoseph@josephhollander.com
cparker@josephhollander.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

s/ Christopher M. Joseph
Christopher M. Joseph

6