**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Q.R., a minor, by and through his natural mother and next friend, JANE DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PUMP LAB, SL,**<br><br>**Defendant.** | **Case No. 6:25-cv-01095-HLT-BGS** |

## MEMORANDUM & ORDER

This case is one of four nearly identical cases brought by Plaintiff against commercial websites that contain pornographic content for failing to comply with Kansas's age-verification law. The Court dismissed two for lack of personal jurisdiction and compelled arbitration in the third (which Plaintiff then voluntarily dismissed). Plaintiff amended the complaint in this case to address shortcomings identified in the Court's jurisdictional dismissals and requests discovery. But the outcome remains the same. Plaintiff has not shown that Defendant has minimum contacts sufficient to support the Court's exercise of personal jurisdiction. Jurisdictional discovery will not change this conclusion. The Court grants Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(2) (Doc. 51), denies Plaintiff's motion for jurisdictional discovery (Doc. 61), and denies Defendant's motion to stay (Doc. 54).

## I.    BACKGROUND[1]

Plaintiff Jane Doe sues Defendant Pump Lab, SL on behalf of her minor child Q.R. Defendant operates a commercial website that contains pornographic content. Kansas law sets standards for commercial entities knowingly sharing or distributing through websites material harmful to minors. K.S.A. § 50-6,146. Plaintiff claims Q.R. was able to surreptitiously gain access to pornography through Defendant's website because Defendant's age-verification measures do not comply with Kansas law.

Defendant is a Spanish company headquartered in Spain that operates a pornographic website (superporn.com). All decisions concerning the operation of the website (including the implementation of age-verification measures) are made and implemented in Spain. The website is accessible to any user in the world without charge wherever access is "legally permissible." Users of the website agree to personal jurisdiction in Spain. Defendant does not sell subscriptions or charge users to access its content. Some content on Defendant's site is curated (i.e., handpicked) for users located in the United States.

Visitors from Kansas represent 0.086% of the website's visitors. Defendant does not have employees in Kansas, does not own or lease real estate in Kansas, does not conduct business in Kansas, is not licensed to conduct business in Kansas, does not pay taxes in Kansas, and does not

---

[1]    The Court resolves Defendant's Rule 12(b)(2) motion without an evidentiary hearing. It therefore assumes the truth of Plaintiff's well-pleaded allegations only to the extent Defendant hasn't controverted them with evidence. If Plaintiff responds to Defendant's controverting evidence with evidence to support her allegations, then the Court accepts Plaintiff's view of things as true for the purposes of the motion. The Court does not weigh evidence or make factual findings. The statements in this section reflect Plaintiff's well-pleaded allegations plus allegations Plaintiff has supported with evidence and any unchallenged controverting statements backed up by evidence that Defendant has made.

have employees in Kansas (or who travel to Kansas). Defendant does not have computer servers in Kansas.

Defendant receives advertising revenue in connection with its website, but it does not receive revenue specifically attributable to Kansas traffic. Instead, revenue is generated under an arrangement with Exoclick (a third-party advertiser). Revenue is based on the country from which visitors access the site (not by state). Defendant does not control the selection or placement of the advertisements on its site. Defendant allocates space for advertisements to appear, and Exoclick's servers determine what (if any) advertisement to display when a user visits the site.

Defendant uses geolocation technology but not to promote or direct content to Kansas. Instead, Defendant uses it for compliance purposes (i.e., to block content from reaching certain users in locations where the content might be banned or restricted). For example, Defendant uses it to prevent access by minors and to comply with a jurisdiction's laws and regulations. Defendant currently restricts access for users attempting to access its website from Kansas.

Defendant has developed its own content-delivery network (CDN) infrastructure. A CDN is a dispersed system of servers that facilitates delivery of a website's content. The servers exist in certain "points of presence" (PoP) and accelerate the delivery of a website to users located in areas proximate to the servers. Defendant employs two CDNs: CDN77 and CloudFlare.[2]

CDN77 has servers in Denver, Dallas, and Chicago (but not in Kansas). CDN77 allows its customers to choose locations the customers want to prioritize for content delivery services by selecting the PoPs the customer wants to use. But Defendant does not use CDN77's services in this fashion. Instead, Defendant uses CDN77 to speed content delivery to every location. For

---

[2]  Defendant's CEO states in his declaration that Defendant only uses CDN77's CDN services and that it uses CloudFlare only for its Domain Name System (DNS) service. Plaintiff contends Defendant uses both CDN77's and CloudFlare's CDN services. The Court accepts Plaintiff's allegation as true for purposes of the present motion.

Defendant, having servers close to Kansas isn't a particular concern and no special efforts are made to speed delivery of content to Kansas. Defendant wants its site to be fast every place it has users. Defendant uses CloudFlare for its website's text and scripts. CloudFlare has a server in Kansas City, Missouri, which borders the forum.

Defendant's website also uses cookies. A cookie is a file that exists on a user's device and that is used to identify the user and provide information about the user and the user's browsing activity. Defendant installed cookies on Plaintiff's computer when Q.R. accessed Defendant's site. Some of the information Defendant collects through cookies relates to its users' geographic location and some information is sent to advertisers. Some of the cookies can collect data about users that might be able to be monetized.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges personal jurisdiction. A plaintiff overcomes this challenge by making a prima facie showing that the court has personal jurisdiction. *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1307 (10th Cir. 2024). The burden to prove personal jurisdiction belongs to the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). But the burden is "light" at the pleading stage. *Id*.

A court confronting such a motion accepts as true the plaintiff's well-pleaded jurisdictional allegations unless they have been controverted by the defendant through an affidavit or other evidence. The plaintiff must then support the controverted allegations by competent proof. *Id*. Because a court is not tasked with weighing evidence at this stage, it resolves conflicting affidavits or evidence in the plaintiff's favor and will consider the plaintiff's "prima facie showing . . . sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations and citation omitted).

### III.    ANALYSIS

There are multiple parts to a personal jurisdiction analysis. This case focuses on the limits to personal jurisdiction imposed by the Fourteenth Amendment's due process clause. Defendant admits that its website was accessible in Kansas but argues that it did not intentionally direct its activities at Kansas. Defendant contends it merely operates a website that is universally accessible. Plaintiff disagrees and argues that the ubiquity of Defendant's website and the ability to access the website anywhere does not insulate Defendant from the exercise of jurisdiction in Kansas. Plaintiff highlights Defendant's use of CDNs, Defendant's use of "cookies," Defendant's knowledge of user location, and the revenue Defendant generates from advertising. But still missing is intentional conduct targeting Kansas and the substantial harmful effects from which Plaintiff's claims arise or relate to. The Court finds that it lacks specific personal jurisdiction over Defendant.

### A.    Personal Jurisdiction, Due Process, and Minimum Contacts

The overarching standard for personal jurisdiction is well known. A plaintiff obtains personal jurisdiction over a nonresident defendant in a diversity action by showing that jurisdiction is legitimate under the laws of the forum state (here, Kansas) and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *PureHealth Rsch.*, 105 F.4th at 1307. This two-prong showing essentially collapses in Kansas because Kansas authorizes its courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process. *Progressive N.W. Ins. Co. v. New Horizons RV Corp.*, 2023 WL 7323321, at *2 (D. Kan. 2023).

Personal jurisdiction thus focuses on due process. And the touchstone for due process remains "whether the defendant purposefully established minimum contacts in the forum State." *PureHealth Rsch.*, 105 F.4th at 1307 (internal quotations and citation omitted). A plaintiff may

establish the requisite minimum contacts under one of two theories: "general jurisdiction" or "specific jurisdiction." The type of jurisdiction at-issue here is specific jurisdiction. This theory focuses on "the relationship among the defendant, the forum, and the litigation." *Id.* at 1308 (internal quotations and citation omitted). "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). If the defendant purposefully directs its activities at forum residents and the plaintiff's injuries arise out of or relate to those activities, the defendant has "minimum contacts" with the forum. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). But even where minimum contacts exist, due process still requires that the exercise of jurisdiction be reasonable. *Id.* It must comport with "traditional notions of fair play and substantial justice." *Id.* at 839 (internal quotation and citation omitted).

### B. Defendant's Kansas Contacts and the Purposeful Direction and Arising out of Requirements

Defendant contends the Court lacks personal jurisdiction because Defendant did not purposefully establish minimum contacts in Kansas or, stated differently, purposefully direct its activities at Kansas. The Tenth Circuit has described at least four frameworks for assessing a defendant's purposeful direction of its activities at a forum. *See Old Republic Ins. Co.*, 877 F.3d at 905, 909 & n.21. These frameworks are variously premised on (1) the defendant's continuing relationships with the forum, (2) the defendant's exploitation of commercial marketplaces in the forum, (3) the conduct by the defendant for which harmful effects are felt in the forum, and (4) the defendant's placement of goods in the stream-of-commerce.

Like the other cases, the parties focus on the third framework, which is sometimes referred to as the "harmful effects" framework for determining whether there has been purposeful direction.

The framework looks at the intentional conduct of a defendant and assesses whether that intentional conduct targeted the forum state and had substantial harmful effects there. *Id.* at 907. The Tenth Circuit instructs lower courts to examine "whether the defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Fluent LLC*, 955 F.3d at 845 (internal quotations and citation omitted). The important point is "whether the defendant intended its online content to create effects specifically in the forum state." *Old Republic Ins. Co.*, 877 F.3d at 917 n.35.

Plaintiff does not make a prima facie showing that Defendant intended its online content to create effects in Kansas. The thrust of Plaintiff's position is that Defendant intentionally directed its activities at Kansas by: (1) employing multiple CDN services (at least one of which offered a certain level of customizability); (2) using geolocation technology to deliver tailored advertising to its users; and, (3) receiving money in the form of advertising revenue from Kansas users who accessed its site. But the cumulative effect of these things does not permit the inference that Defendant intentionally targeted Kansas and intended that its website's effects be particularly felt here. Plaintiff then takes another approach and argues that Defendant purposefully directed its activities at the forum when it installed cookies on Plaintiff's computer and collected data about him. Even assuming this could satisfy the purposeful direction requirement, these contacts would still fail to support the exercise of personal jurisdiction because Plaintiff's claims do not arise out of or relate to them. The Court discusses each below.

**CDN.** It is unsurprising that Plaintiff initially focuses on the use of CDNs given this Court's opinions in *Q.R. by and through Doe v. ICF Tech., Inc.*, 2026 WL 369041 (D. Kan. 2026), and *Q.R. by and through Doe v. Titan Websites, Inc.*, 2026 WL 369888 (D. Kan. 2026). A CDN helps website content be quickly and efficiently delivered to users across formidable geographic

distances. A CDN consists of geographically disbursed servers that contain copies of a website's content. It prevents decline in a website's performance (e.g., it minimizes website load times) by allowing the website's content to be delivered to a user from a geographically proximate server. Shorter load times are critical because website users tend to drop off when a website slows down.

Defendant employs two CDNs: CDN77 and CloudFlare. Plaintiff focuses on the sophistication and customizability of Defendant's CDNs and notes that Defendant has represented that it developed its own CDN infrastructure. Defendant uses CDN77 for content delivery, and CDN77 allows Defendant to select which CDN servers it wants to use. Defendant uses CloudFlare's CDN to deliver its website's scripts and text. CloudFlare has a server in Kansas City, Missouri (an adjacent forum). But Defendant wants its site's content to be delivered quickly everywhere. It uses CDN servers as part of a larger effort to ensure content is delivered to users quickly no matter where they are located and does not target Kansas. In fact, neither CDN77 nor CloudFlare has servers in Kansas.[3]

Defendant has the better of the argument. The idea behind the effects framework is that even conduct outside the forum can create contacts with the forum if the defendant intended for the consequences to be felt there. And, within the context of this framework, Plaintiff's argument (like the related cases) proves too much. The record shows that Defendant's use of a CDN is a technical step to make a universally accessible website easier for all users to access no matter where they are located. And, as this Court has held previously, this is no more purposeful direction than the act of setting up the website in the first place. Personal jurisdiction (and the corresponding limits on judicial power) becomes meaningless if the indiscriminate use of a CDN (or any other

---

[3]    The closest CDN77 servers are Denver, Dallas, and Chicago, which are all about 500 miles from where Q.R. accessed the website. The evidence is that there about 13 CDN77 servers nationwide.

indiscriminate technology that facilitates content delivery) easily satisfies it. *See Fluent LLC*, 955 F.3d at 844 (expressing similar concern).

Plaintiff contends that Defendant's use of a CDN is more jurisdictionally significant and relies heavily on an analytic framework described in an article favorably cited by the Court in the related cases: *Internet Jurisdiction: Using Content Delivery Networks to Ascertain Intention. See* Patrick Lin, 24 VA. J.L. & TECH. 1, 24-46 (2020). The article deals with the (occasionally vexing) personal jurisdiction issues that the ubiquitous and non-geographic quality of the internet occasionally invites. The article proposes a solution to some of these issues by proposing a simple test for purposeful direction based on CDN use. But the Court never adopted the article's two-pronged framework because (among other reasons) the Tenth Circuit has already outlined several well-defined frameworks for use in such scenarios, and the article's "CDN framework" isn't one of them. From the Court's perspective, the article's value is its explanation of the underlying technology and its illustration of potential circumstances wherein discriminate CDN use might offer evidence to support or buttress the inference that a website owner is "specifically targeting" a particular region or locale.

In sum, Defendant's use of CDN77 and CloudFlare do not demonstrate that Defendant purposefully directed its website at Kansas.

**Geolocation.**  Plaintiff next points to Defendant's knowledge that people in Kansas visit the website and its subsequent efforts to restrict access for users in the forum. Defendant's awareness that traffic was coming from Kansas would, if true, weigh in favor of finding jurisdiction. This is part of what the Tenth Circuit held in *Shrader v. Biddinger*, 633 F.3d 1235, 1247-48 (10th Cir. 2012), when it explained that some amount of knowledge of where one's content is going is a necessary condition for specific jurisdiction. But this sort of knowledge isn't

enough absent an intentional or purposeful act by Defendant to create a contact specifically with the forum. *See id.*

Plaintiff also points to Defendant's ability to eliminate user traffic from Kansas. But this does little to establish a meaningful connection to the forum. This fact's value to Plaintiff's jurisdictional case depends on the Court's willingness to draw the negative inference that Defendant's later decision to shut off access to Kansans means Defendant's earlier failure to do so reflected purposeful direction of its website at Kansas users. This is not logical; if subsequent efforts to avoid a jurisdiction were sufficient to demonstrate purposeful direction beforehand, then the natural corollary is that a plaintiff would need only to allege that a defendant who operates a website could have, but failed to, eliminate traffic to a particular forum. Embracing such a rule would create an avenue for the sort of "universal jurisdiction" in the internet context that appellate courts have regarded as clearly exceeding the limitations the Fourteenth Amendment's due process clause imposes.

**Advertising.**   Plaintiff also offers Defendant's use of advertising to monetize its traffic as an indication that Defendant purposefully directed its activities at Kansas. But this too falls short of the mark. First, Defendant offers evidence that it makes space on its site available to a third-party advertiser who then chooses the advertisements to populate the space. The "contact" with Kansas created by the advertising, therefore, is largely due to a third-party advertiser's activities and not Defendant's.

Plaintiff contends Defendant receives data from its users and transmits that information to an advertiser. Plaintiff also argues that Defendant receives payments from an advertiser for the traffic Plaintiff and other Kansans generate on its website. It is true that Defendant receives advertising revenue and some of this revenue necessarily came from users in Kansas. But the

revenue is determined on a country-by-country, rather than a state-by-state, basis. Defendant also maintains that although it receives revenue from content accessed through Kansas users, what and whether users saw certain advertisements was a decision made by the advertiser (not Defendant). It's this last point that is the salient one: Purposeful direction focuses on the contacts defendants themselves make with a given forum, not the contacts made by plaintiffs or third parties. *E.g., Fluent LLC*, 955 F.3d at 847.

**Cookies and Data Collection.** The final argument is that Defendant's site purposefully directed its activities at the forum because it employed "cookies" that transmitted information about Plaintiff back to Defendant.[4] Plaintiff identifies a host of information that Defendant's cookies might be capable of collecting and cites to the Ninth Circuit's recent opinion in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), to suggests that the act of installing these on Plaintiff's computer establishes personal jurisdiction over Defendant. Defendant acknowledges its site uses cookies and that it collects certain information about its users. But Defendant's view is that the use of cookies is a basic part of how modern websites operate, and it cites persuasive authority from various district courts suggesting that a website's mere use of cookies is insufficient to support personal jurisdiction.

This is an interesting issue. And in a case where the harm <u>arises from the cookies</u>, like in *Briskin*, the issue becomes even more interesting. But this is not that case. Even if the Court assumed that the collection of information gathered from cookies constitutes purposeful direction at the forum, Plaintiff still fails to show "specific" personal jurisdiction in this case because, unlike *Briskin*, Plaintiff's claims do not arise out of or relate to these contacts. *Cf. id.* at 760 (concluding

---

[4] As Defendant defines the term, a "cookie" is a "small file stored on [a] user's computer" that allows a website to recognize the user and obtain information about the user's browsing habits and customize how content gets displayed. Doc. 52-1 at 15. According to Defendant, cookies help Defendant "improve the quality of [its] website," and allow it to determine which pages users find "useful" and which pages users do not. *Id.*

that the defendant's installation of cookies on the plaintiffs' computers related to their state-law data privacy claims because their privacy-related injuries were of the sort that "tend to be caused" by cookies' installation). "For specific jurisdiction [Plaintiff's] injuries must arise out of or relate to activities that [Defendant] purposefully directed at residents of the forum." *Old Republic Ins. Co.*, 877 F.3d at 909 n.19 (internal quotation and citation omitted). Both the purposeful direction and the "arising out of" requirements must be satisfied for minimum contacts to exist. *Id.* And, here, Plaintiff's claims all relate to the delivery of pornographic content in violation of Kansas state law and not the incidental collection of data or the site's installation of cookies. Even if the installation of cookies could satisfy the purposeful direction requirement, Plaintiff has not satisfied her burden to show her claims are related.

In sum, Plaintiff has not met her burden to show that Defendant purposefully directed its activities at Kansas. The contacts between Defendant and the forum were not due to discriminating, intentional conduct that targeted Kansas. Rather, they were the random and fortuitous contacts inherent in the operation of an indiscriminate and universally accessible website due to Plaintiff's and third parties' unilateral conduct. This is insufficient to support the exercise of specific personal jurisdiction. *Fluent LLC,* 955 F.3d at 840-41.

### C.    Jurisdictional Discovery

Plaintiff seeks jurisdictional discovery to overcome Defendant's motion.[5] The Court has discretion to grant jurisdictional discovery, and this discretion is guided by the Court's determination of whether the outcome might change based on more facts or the resolution of

---

[5]    The Court notes the additional materials Plaintiff offers in support of his motion for jurisdictional discovery. A motion for jurisdictional discovery is not a means to supplement briefing on personal jurisdiction, circumvent page limits, or add new facts or arguments. The Court queries whether the additional factual information associated with the discovery motion should be considered in ruling the motion to dismiss, but it does not change the outcome regardless.

controverted facts. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1188-89 (10th Cir. 2010). But, here, the Court has resolved all properly controverted facts in Plaintiff's favor. The Court has accepted Plaintiff's version of things and drawn all reasonable inferences in Plaintiff's favor. And it is unclear what additional facts Plaintiff hopes to discover that would alter the Court's jurisdictional analysis. The problem is Plaintiff's jurisdictional theory. The problem is not about Plaintiff's inability to marshal unavailable jurisdictional facts within Defendant's control. The Court therefore denies Plaintiff's motion for jurisdictional discovery.[6]

Fundamentally, this is a case about the content available on a universally accessible website that a Kansas user accessed. This case doesn't involve a product that was sold to a Kansas user. This case doesn't involve a subscription service that a Kansas user signed up and paid for. This case doesn't involve content that the website's owner puts on the site that is tailored, customized, or specifically adapted to Kansas users. This case doesn't involve a website's servers being physically sited in Kansas. Defendant's website is available (more or less) everywhere. Defendant wants the website to operate quickly for users everywhere. And Defendant has set it up that way. Q.R. decided to access Defendant's website. And Q.R. alleges his ability to access the site injured him. In short, this is the sort of case that courts have long held that they lack personal jurisdiction over. *See, e.g.*, *Old Republic Ins. Co.*, 877 F.3d at 908 ("[T]he maintenance of a [website] does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."). Additional discovery

---

[6]    The Court also notes that the jurisdictional discovery Plaintiff seeks is neither minimal nor narrowly tailored. Plaintiff wants discovery on nineteen broad categories, plus a Rule 30(b)(6) deposition. Defendant is a foreign corporation. And "where a foreign defendant is involved . . . extensive discovery should not be compelled to determine whether personal jurisdiction exists." *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 872 (10th Cir. 2017) (Kelly, J., concurring). Even if Plaintiff's requested jurisdictional discovery were capable of making a difference, these facts and legal guidance counsel against permitting discovery here.

concerning the technical attributes and characteristics of Defendant's site will not change the complexion of the case.

## IV.   CONCLUSION

The Court concludes that Plaintiff fails to state a prima facie basis for this Court's exercise of personal jurisdiction based on the prevailing standards and binding law.[7] The Court recognizes the tension inherent in a doctrine premised on geographic limitations and the peculiarly non-territorial quality of the internet. The Court has made its best effort to navigate this developing area of the law.

THE COURT THEREFORE ORDERS that Defendant's motion to dismiss for lack of personal jurisdiction (Doc. 51) is GRANTED. The Court denies Defendant's motion to stay discovery (Doc. 54) as moot. The Court denies Plaintiff's motion for jurisdictional discovery (Doc. 61). Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

This case is closed.

 IT IS SO ORDERED.

Dated: June 22, 2026                         /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE

---

[7]   Where jurisdiction is lacking, 28 U.S.C. § 1631 requires courts to consider whether they should transfer the case to a district where jurisdiction exists rather than dismiss without prejudice. Section 1631 allows a court to transfer an action in lieu of dismissal "if it is in the interest of justice." Neither party specifically addresses § 1631, but a court can address it sua sponte. Here, the Court has considered whether transfer under § 1631 is in the interest of justice but finds dismissal without prejudice is appropriate instead. It is unclear to the Court on this record where jurisdiction over Defendant might lie. But it's entirely possible Defendant is amenable to jurisdiction in another forum, and the Court is disinclined to pre-select a venue for Plaintiff to the extent she could opt to re-file elsewhere.